UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

In re:

BRUNO ONE, INC.,

                    Debtor
_____

BRUNO ONE, INC.,

                    Appellant,

v.

UNITED STATES TRUSTEE,

                    Appellee.
_____/

Bankruptcy Case No: 8:19-bk-7927 CPM

Civil Case No.  8:19-cv-3006-T-24

## **ORDER**

This cause comes before the Court on an appeal of the bankruptcy court's orders converting the bankruptcy case from a Chapter 11 to a Chapter 7.  (Doc. No. 57, 58, 82). Appellant-Debtor has filed a brief arguing for reversal (Doc. No. 19), and Appellee-United States Trustee has filed a brief in opposition (Doc. No. 20).  This Court has reviewed the record and finds that the bankruptcy court's orders should be affirmed.

## **I.  Background**

Debtor-Appellant Bruno One, Inc. owns and leases residential real estate.  Debtor filed for bankruptcy under Chapter 11 on August 22, 2019.  On August 23, 2019, the bankruptcy court issued an order directing Debtor to correct certain deficiencies in its petition: (1) a fully completed Summary of Your Assets and Liabilities, Schedules A, B, D, E, F, G, H and Declaration Under Penalty of Perjury were not filed; (2) the Statement of Financial Affairs was

not filed; (3) a Corporate Ownership Statement was not filed; (4) the Chapter 11 list of Twenty

Largest Unsecured Creditors was not filed; and (5) the Case Management Summary was not

filed.  (Doc. No. 12-9).  The due dates for fixing these deficiencies ranged from three to fourteen

days.  An August 26, 2019, the bankruptcy court reminded Debtor of its obligation to file

monthly operating reports.  (Doc. No. 12-10).  The bankruptcy court warned Debtor that the

failure to maintain proper insurance and to file its monthly operating reports would constitute

cause for dismissal or conversion of the case.  (Doc. No. 12-8).

On September 12, 2019, Appellee-United States Trustee ("Trustee") filed a motion to

dismiss or convert the case to Chapter 7, pursuant to 11 U.S.C. § 1112(b)(1), due to Debtor's

failure to file the required documents.  (Doc. No. 12-11).  Pursuant to § 1112(b)(1), the

bankruptcy "court shall convert a case under [Chapter 11] to a case under [C]hapter 7 or dismiss

a case under [Chapter 11], whichever is in the best interests of creditors and the estate, for

cause."[1]  Section 1112(b)(4) sets forth the types of actions that constitute cause, which include:

(1) failure to maintain appropriate insurance, which poses a risk to the estate; (2) failure to

comply with an order of the bankruptcy court; and (3) unexcused failure to satisfy timely any

filing or reporting requirement established by Title 11 or any rule applicable to Chapter 11 cases.

11 U.S.C. § 1112(b)(4)(C), (E), (F).

On September 20, 2019, well after their due date, Debtor made the following four filings:

First, Debtor filed its Case Management Summary indicating that it had real estate worth

---

[1] A bankruptcy court is not required to convert or dismiss the case if "the court determines that
the appointment under section 1104(a) of a trustee or an examiner is in the best interests of
creditors and the estate."  11 U.S.C. § 1112(b)(1).  No one has argued that a Chapter 11 trustee or
examiner should have been appointed, and the bankruptcy court specifically stated that it was not
appropriate to appoint a Chapter 11 trustee, as such would be more expensive than a Chapter 7
trustee.  (Doc. No. 11-1, depo. p. 41; Doc. No. 11-3, depo. p. 22).

approximately $8.3 million and claims from secured creditors totaling approximately $3.2

million.  (Doc. No. 12-13).  Second, Debtor filed its Schedules A, B, D, E, F, G, and H, as well

as its Declaration Under Penalty of Perjury.  (Doc. No. 12-14 through 12-18).  The Schedules

indicated that Debtor's real estate consisted of 28 properties with $3.2 million in debt associated

with them, as well as claims of unsecured creditors totaling approximately $1.9 million.  (Doc.

No. 12-14).  The Schedules also indicated that Debtor had no leases, despite the fact that Debtor

did have leases on at least some of its properties.  (Doc. No. 12-14).  Third, Debtor filed its list of

Twenty Largest Unsecured Creditors, but Debtor failed to fill out the amounts of their claims.

(Doc. No. 12-19).  Fourth, Debtor filed its Statement of Financial Affairs (Doc. No. 12-20),

which the bankruptcy court found to be deficient and gave Debtor fourteen days to fix (Doc. No.

12-21).  Debtor filed an amended Statement of Financial Affairs on October 9, 2019—after the

bankruptcy court's deadline.  (Doc. No. 12-29).

On October 10, 2019, the bankruptcy court held a hearing on the Trustee's motion.  (Doc.

No. 11-2).  At the hearing, the Trustee explained to the bankruptcy court that Debtor did not

obtain proper insurance for its real properties that would protect the bankruptcy estate, and

Debtor's counsel acknowledged that fact.  (Doc No. 11-2, depo. p. 7, 13-21).  The Trustee also

argued that Debtor failed to file all of the required documents, including the August monthly

operating report, prior tax returns, and evidence that any unsecured creditors received notice of

the bankruptcy.  (Doc. No. 11-2, depo. p. 7-9, 22, 24).  Debtor acknowledged its failure to file

the August monthly operating report.  (Doc. No. 11-2, depo. p. 24).

At the hearing, the bankruptcy court stated that it would grant the Trustee's motion to

convert the case.  (Doc. No. 11-2, depo. p. 31).  The bankruptcy court found that there was cause

to convert the case, because Debtor had not obtained sufficient insurance on its properties and

Debtor was not complying with the rules of Chapter 11 and the court's orders. (Doc. No. 11-2, depo. p. 18, 29-30, 43-44). Debtor's filings showed no income coming in, and the bankruptcy court noted that without income, a confirmed Chapter 11 plan was not likely. (Doc. No. 11-2, depo. p. 18). The bankruptcy court found that conversion was preferable to dismissal, because, according to Debtor's filings, there was significant equity in Debtor's real estate that could be used to pay the unsecured creditors. (Doc. No. 11-2, depo. p. 28, 31-32). On October 21, 2019, the bankruptcy court issued its orders converting the case to Chapter 7. (Doc. No. 12-2; Doc. No. 12-3).

Debtor moved for reconsideration, arguing that it had cured its deficient filings, procured insurance, and unusual circumstances had existed that made conversion of the case to Chapter 7 not in the best interest of the creditors and the bankruptcy estate. (Doc. No. 12-36). The bankruptcy court held a hearing on Debtor's motion on November 19, 2019. (Doc. No. 11-1).

At the hearing, the bankruptcy court stated that it could not grant Debtor's motion for reconsideration, as there was no basis for reconsideration under Rules 59 or 60. (Doc. No. 11-1, depo. p. 42-43). The bankruptcy court stated that Debtor did not fix all of the deficiencies in its schedules. (Doc. No. 11-1, depo. p. 42). For example, the bankruptcy court noted that despite the fact that Debtor was a leasing enterprise, Debtor failed to disclose any of its leases of its properties on Schedule G. (Doc. No. 11-1, depo. p. 34-38). The bankruptcy court expressed that it did not "have confidence . . . that [Debtor] gets it, what's necessary for a Chapter 11" and that the court did not have "confidence that [Debtor] can meet the fiduciary requirement." (Doc. No. 11-1, depo. p. 37). On November 21, 2019, the bankruptcy court issued an order denying Debtor's motion for reconsideration. (Doc. No. 12-5).

Debtor appealed the bankruptcy court's order granting the Trustee's motion to convert the case to Chapter 7, as well as the order denying Debtor's motion for reconsideration.  Debtor then filed a motion with the bankruptcy court to stay the bankruptcy proceedings pending the appeal in this Court.  (Doc. No. 12-50).

On January 9, 2020, the bankruptcy court held a hearing on Debtor's motion to stay pending appeal.  (Doc. No. 11-3).  The bankruptcy court evaluated Debtor's likelihood of success on the merits and stated the following:

> I recall, this case came in, sort of as a mess. I mean, there was inadequate disclosure. The creditors didn't know about the meeting of creditors. There was a period of time I gave the Debtor to do what the Debtor needed to do. The Debtor apparently responded that they couldn't possibly prepare schedules because they had no access to their own information, because some other person had it and wouldn't give it to them. And yet, there weren't schedules prepared that were even rough estimates that would disclose those as being a rough estimates. The Debtor should have had access on its own to who are the creditors in the case. . . . No money. No cash flow. Late filings.

(Doc. No. 11-3, depo. p. 21-22).  Debtor responded that because third-parties possessed some of the information, Debtor did not want to file estimates or anything that could be misleading.

(Doc. No. 11-3, depo. p. 22).  The bankruptcy court then stated the following:

> So you asterisk it. It's done all the time. Unknown at present, because. And you file an immediate motion for turnover. Immediately under 542 or 543. That wasn't done. If you were to have filed that, on you know, day two or three, after your realized you can't put together complete schedules, you could have put together partials. Then that would have shown that you're doing something to address that there's some wild person out there that's got something that you need. That wasn't done. . . . The schedules were not prepared even with the known creditors.

(Doc. No. 11-3, depo. p. 23, 28).

The bankruptcy court pointed out that it had entered an order setting out the deadlines and which told Debtor what to do if it could not meet a deadline. (Doc. No. 11-3, depo. p. 57-59). Yet, Debtor failed to meet deadlines and filed deficient documents. (Doc. No. 11-3, depo. p. 45-47). As a result, the bankruptcy court denied Debtor's motion to stay pending appeal, in part because the court believed that Debtor was not likely to succeed on the merits of its appeal.

## II.  Debtor's Appeal

Debtor appeals the bankruptcy court's decision to convert the case to Chapter 7 and the decision to deny reconsideration. This Court reviews the bankruptcy court's decision to convert Debtor's bankruptcy case to Chapter 7, pursuant to § 1112(b), for abuse of discretion. In re Pegasus Wireless Corp., 391 Fed. Appx. 802, 802 n.2 (11th Cir. 2010)(citation omitted). Likewise, this Court reviews the bankruptcy court's denial of Debtor's motion for reconsideration for abuse of discretion. See In re: Dimaria Properties, LLC, 654 Fed. Appx. 1018, 1020 (11th Cir. 2016). A bankruptcy court abuses its discretion if it fails to apply the correct legal standard or its factual findings are clearly erroneous. See In re Celotex Corp., 227 F.3d 1336, 1338 (11th Cir. 2000).

"A finding of fact is clearly erroneous when, although there is evidence to support it, the reviewing court on review of the entire evidence is left with the definite and firm conviction that a mistake has been committed." Lightner v. Lohn, 274 B.R. 545, 548 (M.D. Fla. 2002). "The burden of showing clear error falls on the party seeking to overturn the Bankruptcy Court's findings." In re Mirabilis Ventures, Inc., 2010 WL 1644915, at *2 (M.D. Fla. April 21, 2010).

"This Court reviews the Bankruptcy Court's conclusions of law under a de novo standard." Id. "Under de novo review, this Court independently examines the law and draws its

own conclusions after applying the law to the facts of the case, without regard to decisions made by the Bankruptcy Court." Id.

As grounds for this appeal, Debtor argues the following: (1) unusual circumstances existed that made converting the case to Chapter 7 not in the best interest of the creditors or the estate; (2) the bankruptcy court should have dismissed, rather than converted, the case; and (3) Debtor eventually obtained sufficient insurance, so reconsideration was warranted. As explained below, this Court rejects Debtor's arguments and finds that the bankruptcy court did not abuse its discretion.

**A.  Unusual Circumstances**

Debtor argues that the bankruptcy court erred in converting this case to Chapter 7 pursuant to § 1112(b), because unusual circumstances existed that made converting the case not in the best interest of the creditors or the estate. Section 1112(b)(1) provides that the bankruptcy "court shall convert a case under [Chapter 11] to a case under [C]hapter 7 or dismiss a case under [Chapter 11], whichever is in the best interests of creditors and the estate, for cause." Section 1112(b)(4) sets forth the types of actions that constitute cause, which include: (1) failure to maintain appropriate insurance, which poses a risk to the estate; (2) failure to comply with an order of the bankruptcy court; and (3) unexcused failure to satisfy timely any filing or reporting requirement established by Title 11 or any rule applicable to Chapter 11 cases. 11 U.S.C. § 1112(b)(4)(C), (E), (F). The bankruptcy court found that cause existed for conversion due to insufficient insurance on Debtor's properties and Debtor's failure to comply with court orders and Chapter 11 rules. This Court finds that there was no error in the bankruptcy court's findings that cause existed for conversion.

7

Debtor argues that the exception set forth in § 1112(b)(2) applies, which made conversion an abuse of discretion.  Section 1112(b)(2) provides that the bankruptcy court may not convert a Chapter 11 case to Chapter 7 if two elements are met.  First, the bankruptcy court must find and specifically identify unusual circumstances establishing that converting the case is not in the best interests of the creditors and the estate.  Second, the debtor must establish that: (1) there is a reasonable likelihood that a plan will be confirmed within a reasonable period of time; (2) the grounds for converting the case do not include a substantial or continuing loss to or diminution of the estate;  and (3) there exists a reasonable justification for the act or omission creating the grounds for converting the case that can be cured within a reasonable period of time.  As explained below, this Court agrees with the bankruptcy court that Debtor did not show that it meets the requirements for the exception.

For the exception to apply, the bankruptcy court must find and specifically identify unusual circumstances establishing that converting the case is not in the best interests of the creditors and the estate.  Debtor contends that unusual circumstances existed—third parties controlled the financial information necessary to fill out the schedules and a state court order barred Debtor from contacting tenants in some of its properties, which was necessary in order to arrange for property inspections that were required in order to obtain insurance.  The bankruptcy court found that these circumstances were neither unusual nor a sufficient reason for Debtor's deficient filings and insufficient insurance, and this Court agrees with the bankruptcy court's findings.

The bankruptcy court specifically stated at the first hearing that Debtor's reason for failing to obtain sufficient insurance was not unusual, and instead, stated that it was "bad business management," which "happens all the time."  (Doc. No. 11-2, depo. p. 17).  The

bankruptcy court pointed out that the reason why inspections were necessary was because Debtor had let its insurance lapse, which the bankruptcy court stated was not good business management.  (Doc. No. 11-2, depo. p. 15).

The bankruptcy court also rejected Debtor's argument that a state court-appointed receiver controlled the information that Debtor needed in order to timely and properly fill out the bankruptcy schedules. (Doc. No. 11-2, depo. p. 24).  The bankruptcy court pointed out that the receiver had only been appointed for five of the twenty-eight properties, yet Debtor failed to timely and properly fill out the bankruptcy schedules as to all twenty-eight properties.  (Doc. No. 11-2, depo. p. 5, 24, 27, 32).  Likewise, the bankruptcy court rejected the argument that because the law firm of Ghidotti Berger collected and maintained the rents for one of the properties in receivership, Debtor did not have sufficient information to fill out its schedules and other required documents for the remaining twenty-seven properties.  (Doc. No. 11-2, depo. p. 12).  Additionally, the bankruptcy court noted that Debtor did not file the appropriate motions to get the necessary information from the third parties.  (Doc. No. 11-3, depo. p. 29-30).

The bankruptcy court also rejected Debtor's argument that conversion was not in the best interests of the creditors and the estate.  The bankruptcy court pointed out that all of the creditors that had addressed the issue objected to Debtor remaining in Chapter 11.  (Doc. No. 11-3, depo. p. 24).  The bankruptcy court found that Debtor was not complying with the rules of Chapter 11 and that if the case were converted to Chapter 7, the secured and unsecured creditors would get paid (based on Debtor's filings indicating that there was $5 million in equity in the properties and $1.9 million in unsecured creditors).  (Doc. No. 11-2, depo. p. 29-31).  This Court agrees with the bankruptcy court's finding that conversion was in the best interest of the creditors and the bankruptcy estate.

Debtor argues that conversion to Chapter 7 jeopardizes the creditors and the estate because Debtor no longer maintains the ability to contest Residential Mortgage Loan Trust I's ("RMLT") claims. Debtor contends that RMLT, Debtor's largest secured creditor, is an entity that does not really exist, and as such, it does not have a valid claim against Debtor's assets. The bankruptcy court rejected Debtor's argument that Debtor was in a better position than a Chapter 7 trustee to pursue Debtor's claims against RMLT and to defend against the existing foreclosures. (Doc. No. 11-3, depo. p. 26, 30-32). The bankruptcy court stated that the Chapter 7 trustee would pursue the claims of the bankruptcy estate, and Debtor's counsel could possibly work with counsel for the Chapter 7 trustee. (Doc. No. 11-3, depo. p. 26, 30-32). Finally, the bankruptcy court noted that even if RMLT was not the proper entity to assert secured claims against Debtor's properties, some entity had secured claims on those properties that would need to be paid. (Doc. No. 11-2, depo. p. 11-12). This Court agrees with the bankruptcy court's rejection of Debtor's argument on this issue.

Additionally, Debtor did not establish another element for the exception to apply—Debtor did not show that there was a reasonable likelihood that a plan would be confirmed within a reasonable period of time. Paula Rush (Debtor's Vice President) explained to the bankruptcy court that Debtor had not had cash flow for one to two years. (Doc. No. 11-1, depo. p. 20-21, 38). The bankruptcy court pointed out that since Debtor did not have any money coming in, it would not be possible to get a reorganization plan confirmed under Chapter 11. (Doc. No. 11-2, depo. p. 17-18, 29-30; Doc. No. 11-1, depo. p. 21). This Court agrees with the bankruptcy court's finding on this issue.

Debtor argues that if the case remained in Chapter 11, it would be able to pursue its claims against RMLT and eliminate RMLT's claims against Debtor. As a result, Debtor would

have more equity to craft a reorganization plan that would get approved.  However, this argument misses the mark, as even if RMLT is not the proper entity to assert secured claims against Debtor's properties, it appears that some entity had secured claims on those properties that would still need to be paid.  (Doc. No. 11-2, depo. p. 11-12; Doc. No. 11-3, depo. p. 32).

This Court also rejects Debtor's argument that by converting the case to Chapter 7 and appointing a Chapter 7 trustee, the bankruptcy estate will incur significant administration costs that will reduce available funds to pay the creditors.  Throughout all three hearings discussing the conversion of the case to Chapter 7, the bankruptcy court continually pointed out Debtor's inability to properly manage its business in order to pay off its creditors within the confines of Chapter 11.  (Doc. No. 11-1, depo. p. 41-42).  This Court agrees with the bankruptcy court's finding on this issue.

Likewise, this Court agrees with the bankruptcy court that Debtor did not establish the element that there existed a reasonable justification for the act or omission creating the grounds for converting the case that could be cured within a reasonable period of time.  The bankruptcy court did not find Debtor's excuses for its deficient filings to be sufficient and it pointed out that Debtor had already made attempts to cure the deficiencies but failed to do so.  (Doc. No. 11-1, depo. p. 33, 42).

Thus, based on the above, this Court finds that Debtor did not show that the exception set forth in § 1112(b)(2) applies, and therefore, the bankruptcy court's  decision to convert the case to Chapter 7 was not an abuse of discretion.  Furthermore, the bankruptcy court's decision to deny reconsideration on this basis also was not an abuse of discretion.

### B.  Dismissal versus Conversion

Next, Debtor argues that the bankruptcy court should have dismissed, rather than converted, the case.  The bankruptcy court determined that conversion was in the best interest of the creditors (as well as Debtor) because there was equity in the real estate that could be used to pay off the creditors and then provide Debtor with money to start over.  (Doc. No. 11-2, depo. p. 31-32).  The bankruptcy court noted that if it had dismissed the case, the unsecured creditors likely would not get paid.  (Doc. No. 11-3, depo. p. 48-49).  This Court agrees with the bankruptcy court's findings on this issue.  Accordingly, this Court finds that the bankruptcy court did not abuse its discretion in converting this case and denying the motion for reconsideration on this issue.

### C.  Insurance

Next, Debtor argues that by the time of the hearing on Debtor's motion for reconsideration, it had obtained sufficient insurance, so reconsideration was warranted.  After reviewing the record, it is unclear to this Court whether sufficient insurance was obtained.

Debtor contends that it had obtained sufficient insurance by October 21, 2019.  (Doc. No. 12-33).  At the reconsideration hearing, the bankruptcy court stated that there was still not sufficient insurance.  (Doc. No. 11-1, depo. p. 11-14, 32-33, 42).  However, at the hearing on the motion to stay pending appeal, Debtor explained that the amount of insurance it had obtained was based on the cost to rebuild the properties and did not include the underlying value of the land.  (Doc. No. 11-3, depo. p. 19-20).  It is unclear whether the bankruptcy court found this to be sufficient.  (Doc. No. 11-3, depo. p. 19-20).  However, at the hearing on the motion to stay pending appeal, the bankruptcy court also asked about the existence of flood insurance, which

Debtor was unsure about.  (Doc. No. 11-3, depo. p. 19).  Thus, it is unclear to this Court whether Debtor did, in fact, obtain sufficient insurance.

Even assuming that Debtor had obtained sufficient insurance by October 21, 2019—three months after filing its petition for bankruptcy relief—such does not render the bankruptcy court's initial decision to convert the case to Chapter 7 erroneous, because Debtor failed to obtain sufficient insurance at that time, which was sufficient cause for conversion.  Additionally, this Court finds that there were still deficient filings and Debtor's failure to comply with the bankruptcy court's orders and the rules of Chapter 11 that were grounds for denying reconsideration.  For example, Debtor, a company whose business consists of leasing its properties, failed to list its leases on Schedule G.  (Doc. No. 12-14, p. 30).  Furthermore, the bankruptcy court stated that it was not just the lack of sufficient insurance that caused the court to deny reconsideration, it was the totality of the circumstances, "basing it mostly on [Debtor's] own deficiencies and omissions . . . and the reasons why [Debtor said it] couldn't comply." (Doc. No. 11-3, depo. p. 51).

In its appeal brief, Debtor contends that it had cured the majority of its deficiencies, implicitly acknowledging that it still had other matters to cure.  (Doc. No. 19, p. 17-18).  Debtor contends that it "had a history of curing matters in a reasonable time."  (Doc. No. 19, p. 18). However, the record in this case belies that assertion.  Accordingly, this Court finds that even if Debtor did obtain sufficient insurance by October 21, 2019, the bankruptcy court did not abuse its discretion in denying reconsideration of its decision to convert the case to Chapter 7.

## III.  Conclusion

Accordingly, it is ORDERED AND ADJUDGED that this Court finds that the bankruptcy court did not abuse its discretion in converting this case to Chapter 7 and denying

reconsideration.  As such, this Court affirms the bankruptcy court's decisions as set forth in its

orders on appeal (Doc. No. 57, 58, 82).  The Clerk is directed to enter judgment for Appellee and

to close this case.

DONE AND ORDERED at Tampa, Florida, this 27th day of July, 2020.

SUSAN C. BUCKLEW
United States District Judge

Copies to:
Counsel of Record
The Honorable Catherine Peek McEwen